UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

**NSB ADVISORS LLC,**
Tax I.D. No. 80-0377379

                            Debtor.
------------------------------------------------------------x

Chapter 11 Case
Case No. 15-35009 (CGM)

## INDEX OF DOCUMENTS FILED
## <u>WITH CHAPTER 11 PETITION</u>

Exhibit A:      Affidavit Under Local Bankruptcy Rule 1007-2

                  Schedule 1:    List of Twenty Largest Unsecured Creditors
                  Schedule 2:    Balance Sheet
                  Schedule 3:    List of Pending Actions

Exhibit B:      Resolutions

## Exhibit A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:

                                                            Chapter 11 Case

**NSB ADVISORS LLC,**                                      Case No. 15-35009 (CGM)
Tax I.D. No. 80-0377379

                                 Debtor.

------------------------------------------------------------x

## AFFIDAVIT OF WILLIAM F. NICKLIN
## PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2

STATE OF NEW YORK          )
                                  )    ss:
COUNTY OF DUTCHESS     )

        William F. Nicklin, being duly sworn, deposes and says the following under penalty of perjury, 18 U.S.C. § 1001:

        1.     I am the manager of NSB Advisors LLC ("<u>NSB</u>" or the "<u>Debtor</u>"). In this capacity I have obtained detailed knowledge of, and experience with, the business and financial affairs of the Debtor.

        2.     I submit this affidavit ("<u>Affidavit</u>") pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "<u>Local Bankruptcy Rules</u>") to assist the Court and other parties in interest in understanding the circumstances that compelled the commencement of this Chapter 11 case on January 5, 2015 (the "<u>Petition Date</u>") and in support of the Debtor's petition (the "<u>Petition</u>") for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

        3.     Except as otherwise indicated, all facts set forth in this Affidavit are based upon my personal knowledge, my discussions with financial and legal advisors, my review of relevant documents, information provided to me by employees working under

my supervision, or my opinion based upon my experience, knowledge, and information

concerning NSB's operations and financial affairs.  If called upon to testify, I would

testify to the facts set forth in this Affidavit.  I am authorized to submit this Affidavit on

behalf of the Debtor.

**PRELIMINARY STATEMENT**

4.      Part I of this Affidavit provides a general overview of NSB's

organizational and corporate structure and description of the business.  Part II describes

the circumstances giving rise to the commencement of the Chapter 11 case, certain pre-

bankruptcy steps taken by me and by NSB to address NSB's difficulties, and the Debtor's

goals in this Chapter 11 case.  Finally, Part III outlines the information required by Local

Bankruptcy Rule 1007-2.

**I.      THE DEBTOR'S BUSINESS**

**Organizational, Corporate Structure,
and Description of Business**

5.      NSB is a limited liability company organized and existing under the laws

of the State of Maryland.  The membership interests in the Debtor are held 100% by NSB

Holdings Group LLC ("Holdings").  The membership interests in Holdings are held by

me, members of my family, and certain employees of NSB.  I am also the manager of

Holdings.

6.      The Debtor is a registered investment adviser with offices at 200 Westage

Business Center Drive, Suite 228, Fishkill, New York 12524, which commenced

operation in or about 2009.  NSB's business model is intended to serve the needs of

corporate and high net worth individual investors by advising clients about buying,

selling and otherwise investing in securities and instruments.  NSB does not hold any

cash, stocks or other securities for the benefit of its clients, but directs and manages client accounts, including placing transaction orders with brokers, dealers and issuers for clients.  As of the Petition Date, Pershing Advisor Solutions LLC serves as custodian for the assets and investments managed by the Debtor.  The assets of Debtor's customers are not property of the Debtor or the Debtor's estate.

## II.      EVENTS LEADING TO CHAPTER 11 AND CHAPTER 11 GOALS

### Debtor's Financial Difficulties

#### (a) The Actions of C.L. King

7.      The Debtor's financial difficulties stem from a confluence of events.  For several years after NSB commenced operations, it was very successful in realizing high rates of return for its clients, and by early 2012, NSB had over 700 client accounts and assets under management in excess of $1.2 billion.  However, in the first and second quarters of 2012, NSB experienced a severe decline in its clients' portfolios.  NSB believes that much of the problem was caused by and exacerbated by the actions of NSB's then custodian and broker, C.L. King & Associates, Inc. ("C.L. King").

8.      NSB had contracted with C.L. King in 2009 to provide technical resources and services to NSB, and custody and brokerage services to NSB's clients. (Pershing now provides those custody and brokerage services.)  Beginning in 2009 and continuing until as late as November of 2011, C.L. King repeatedly and consistently assured NSB of C.L. King's financial and other resources, and of C.L. King's willingness and ability to service NSB's fast-growing portfolios.

9.      However, in early 2012, C.L. King began making unusual demands upon NSB, supposedly to address regulatory requirements, including that NSB reduce its

clients' collective combined debit balances by $231 million.  C.L. King continued to represent to NSB that C.L. King was in good financial condition, but claimed that NSB's business had grown too big relative to C. L. King's resources.

10.     In addition, in late April of 2012, C.L. King demanded that NSB expedite the transfer of its top ten accounts to a new custodian, a demand that NSB believes was inconsistent with C.L. King's obligations as custodian under the then-existing services agreement between the parties.  Moreover, given what was involved in establishing a custody agreement for NSB accounts at another firm and replacing the infrastructure provided by C.L. King, compliance with that demand was logistically impossible in the timeframe that C.L. King required, a fact which C.L. King knew.

11.     Unsatisfied with the difficulties it had already created for NSB, C.L. King then began to pressure NSB's clients directly.  In May of 2012, C.L. King sent letters or spoke to certain of NSB's clients, notifying them of changes to C.L. King's policies with respect to NSB-managed accounts, including new requirements that the clients deposit cash or marginable securities into the client accounts, and urging them to move their accounts out of C.L. King.  C.L. King was aware that the many arrangements NSB had to put in place to transition its accounts were not yet ready, and that urging clients to leave C.L. King was tantamount to urging them to leave NSB.  These policy changes and outright exhortations to clients to move their accounts unnerved many of NSB's clients, who either moved or liquidated the accounts out of NSB.  The reduction in the number and value of the accounts being managed by NSB negatively impacted the prices of

investments for NSB's remaining clients, which added to clients' alarm, and caused more clients to move their assets under management out of NSB. [1]

12.     In August of 2012, C.L. King filed an arbitration proceeding against me personally, for monies I allegedly owed to C.L. King, relating to losses in my personal margin account. I filed counter-claims against C.L. King, alleging, among other things, that those losses were caused by C.L. King's actions.  In March of 2013, NSB commenced a separate arbitration proceeding against C.L. King relating to C.L. King's breach of its contractual relationship with NSB, tortious interference with NSB's relationships with its clients, gross negligence and fraud. FINRA (the Financial Industry Regulatory Authority) has consolidated the two arbitrations proceedings.

**(b)     Other Arbitrations and Lawsuits**

13.     NSB contracted to and began to move its accounts to Pershing in or about June of 2012.  Unfortunately, by that time, because of the actions of C.L. King

---

[1] Later, NSB learned that C.L. King's problems with its Net Capital Requirements did not stem solely from the growth of NSB's business. C. L. King had engaged in a series of principal transactions with an affiliate entity, Paradigm Capital Management, Inc. ("Paradigm"), in which C.L. King purchased securities from Paradigm for C.L. King's proprietary account until the affiliate decided if it wanted to repurchase the securities or if the securities were to be sold in the market.  These principal transactions had a negative impact on C.L. King's net capital at the end of 2011.

C.L. King did not advise NSB of these trading activities or their effect on C.L. King's Net Capital Requirements.  That situation became known to NSB after the Securities and Exchange Commission (the "SEC") announced it had issued a cease-and-desist order (the "Order") against Paradigm and its principal, Candace Weir, who is also the principal of C.L. King.  According to the SEC Order, Paradigm and Weir agreed to pay approximately $2.2 million to settle the SEC's charges.

discussed above and the impact of those actions, a number of clients had left NSB, and

several former clients subsequently brought suits or arbitrations against the Debtor.  NSB

believes that many of the losses suffered by clients in 2012 are attributable in substantial

part to C.L. King's actions, and in those arbitrations in which NSB could jurisdictionally

assert indemnification claims against C.L. King, it has done so.

14.    The most significant client claim asserted against NSB was the subject of

an arbitration before the American Arbitration Association.  The arbitrator in that matter

awarded the former client damages in excess of $23 million, and upon the former client's

request, the arbitrator subsequently increased that award by approximately $2 million. (I

note that the same party has also filed an action against C.L. King directly.)  NSB has

filed a Petition to Vacate or Correct the Arbitration Award in the Superior Court of the

State of California for the County of San Diego, and oral argument on NSB's petition and

the former client's counter-petition to confirm the award is presently scheduled for

January 5, 2015.

(c)    **Efforts to Stabilize and Market the Business**

15.    Since moving its accounts to Pershing, NSB has achieved a degree of

stability in its operations.  However, the events of 2012 resulted in a significant decline in

NSB's client base and in the amount of assets under NSB's management – which, taken

together, are the basis of NSB's income.  Currently, the Debtor has approximately 410

accounts, 355 of which are managed, and assets under management of approximately

$143 million.

16.    The Debtor has been working to restore and improve its customer

relationships, even while dealing with the C.L. King arbitration and the arbitration

proceedings involving former clients.  But by the summer of 2014, the financial strain of all of these legal proceedings convinced NSB, and me, as its principal, that I needed to find the path that would best serve NSB's creditors and clients.

17.    For the past five months, I have been actively searching for a buyer for NSB's business that could offer value to NSB's creditors and competently service NSB's clients.  The marketing process has been an unusual one, however, due to the nature of NSB's business and assets and the arbitrations and other proceedings involving the Debtor.

18.    NSB owns no real estate and as the schedules of assets and liabilities and the statement of financial affairs being filed with the Court evidence, NSB has no "hard" assets of any significant value.  The value of NSB is in its portfolio of clients, who, due to the nature of the investment advisory business, can move their accounts elsewhere at any time.

19.    The vast majority of NSB's clients are businesses and individuals that were first my clients.  They came to NSB and have remained with the company because of their long-standing professional relationships with me.  For that reason, I have engaged in discussions with individuals and entities in the financial services industry that were willing to permit me to continue to service these clients – through an employment agreement or other business relationship --  *and* were willing to structure the purchase price payable to NSB at least in part on how many clients followed me to the new company.  I believe that this type of structure offers the best means of maximizing value for NSB's estate and creditors.

20.     Because there can be no guaranty of how many clients will choose to become clients of my prospective employer, much of the sale consideration is uncertain. However, I have worked in good faith to identify and negotiate with a buyer that is capable of supporting me in competently serving the clients and that is willing to remit a percentage of the amount of income generated by former NSB clients to NSB.  The asset purchase agreement between NSB and Emancipation Management LLC ("Emancipation") is the result of those efforts.

21.     It is the Debtor's intention to seek approval of the asset sale to Emancipation pursuant to section 363(b) of the Bankruptcy Code, subject to higher and better offers.  While I believe the offer from Emancipation satisfies the criteria outlined above, as it offers NSB the possibility of payments over time if current NSB clients move to Emancipation, I am open to exploring other potential transactions that meet the criteria described in the previous paragraph.  Nothing in the Emancipation offer places any limits on my ability or that of NSB to explore alternative transactions for the benefit of the Debtor's estate and creditors.

## Chapter 11 Goals

22.     This Chapter 11 case is intended to provide the Debtor with the breathing spell afforded by the automatic stay, to protect and preserve assets for the benefit of creditors, and to enable the Debtor to resolve claims on an equitable basis and in a centralized forum.  In addition and as discussed above, during the Chapter 11 case, the Debtor intends to ask the Court to approve Emancipation as a "stalking horse" bidder, while NSB continues to explore all avenues to maximize asset values.  The Debtor's hope is that a distribution to holders of allowed unsecured claims will ultimately be possible,

as a result of income generated by the business, proceeds from any sale transaction and perhaps from actions brought by NSB.  The Debtor believes that the tools provided by Chapter 11 will enable it to maximize asset values for the benefit of its creditors.

## III. INFORMATION REQUIRED BY LOCAL BANKRUPTCY RULE 1007-2

23.    It is my understanding that Local Rule 1007-2 requires certain information related to the Debtor, which is set forth below.

24.    The case was not originally commenced under Chapter 7, 9, 12, 13 or 15 of the Bankruptcy Code.

25.    No committee of creditors has been formed in the case to date.

26.    **Schedule 1**, annexed hereto, sets forth a list of the names, addresses, contact persons, and amount of claims of the creditors holding the twenty (20) largest unsecured claims, excluding insiders, against the Debtor.

27.    There are no creditors that hold claims secured by the Debtor's assets.

28.    As of the Petition Date, I am the Debtor's sole executive.  I have served as the head of the Debtor's business since 2009 and its manager since 2010.   Christine Murphy has worked with me since 2009 as the Debtor's operations and customer support manager but is not an executive of the company.

29.    **Schedule 2**, annexed hereto, sets forth a list of the Debtor' assets and liabilities as of the Petition Date, unless otherwise indicated.

30.    The Debtor does not have any publicly held securities.

31.    None of the Debtor's property is in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, or agent for any such entity.

32.     The Debtor is a party to a nonresidential real property lease for premises located at 200 Westage Business Center, Suite 228, Fishkill, New York 12524, pursuant to a lease between Westage Medical Development II, LLC, as landlord, and the Debtor, as tenant.

33.     The Debtor's books and records are located at the Debtor's facility located at 200 Westage Business Center, Suite 228, Fishkill, New York 12524.

34.     **Schedule 3**, annexed hereto, sets forth a list of pending actions against the Debtor.

35.     It is estimated that the Debtor's salaries for its employees (exclusive of Mr. Nicklin) for the thirty (30) day period following the Petition Date will total approximately $35,000.

36.     It is estimated that salaries for the Debtor's officers, managers and members for the thirty (30) day period following the Petition Date will total zero.[2]

37.     It is anticipated that for the thirty (30) day period following the Petition Date, there will be no collections of fees, accounts receivable, or miscellaneous income by the Debtor.  The Debtor receives payments of fees from clients on a quarterly basis, and received such a payment at the beginning of January. (The funds are moved from the client's account to Pershing and then promptly transferred to NSB's operating account.) The next quarterly payment is not due until early April.

38.     It is anticipated that in the thirty (30) day period following the Petition Date, the Debtor will disburse the following amounts:

---

[2] I have not drawn a salary from the Debtor in the past two years, exclusive of a payment of $5,000 in June of 2013.

| Expense | Amount |
|---|---|
| Payroll | $35,000.00 |
| Benefits | $645.00 |
| COGS and Selling/Gen. Admin Expenses, including leases and contracts | $43,146.00 |
| Utilities | $2,434.00 |
| Other/Miscellaneous | $200.00 |
| TOTAL | $81,425.00 |

39.     Notwithstanding anything to the contrary contained in this Affidavit or any schedule annexed hereto, nothing in this Affidavit or any schedule is intended to be, or should be construed as, an admission with respect to (a) the liability for the amount of, the enforceability of or the validity of any claim, (b) the existence, validity, enforceability, or perfection of any lien, mortgage, charge, pledge or other grant of security for any claim or (c) the proper characterization of any transaction or financing as a sale or financing.

40.     The Debtor reserves the right to amend or supplement any of the attached schedules in the event additional information is obtained by the Debtor.

41.     The Debtor believes that the protection of the Bankruptcy Court will enable it to successfully reorganize for the benefit of the estate and its creditors.

Dated: Fishkill, New York
January 5, 2015

**NSB ADVISORS LLC**,
Debtor and Debtor-in-Possession

By: */s/ William F. Nicklin*
William F. Nicklin,
Manager

I, William F. Nicklin, manager of NSB Advisors LLC, hereby certify under the penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief.

*/s/ William F. Nicklin*
William F. Nicklin

# Schedule 1

B4 (Official Form 4) (12/07)

# United States Bankruptcy Court
## Southern District of New York

In re   **NSB Advisors LLC**                                              Case No.   15-35009 (CGM)
_____                          _____
Debtor(s)                                      Chapter   **11**

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [*or chapter 9*] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian."  Do not disclose the child's name.  See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| *Name of creditor and complete mailing address including zip code* | *Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | *Nature of claim (trade debt, bank loan, government contract, etc.)* | *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | *Amount of claim [if secured, also state value of security]* |
| **Lynn Gorguze IRA, et al. C/o Daniel Weiner/Hughes et al One Battery Park Plaza New York, NY 10004** | **Lynn Gorguze IRA, et al. C/o Daniel Weiner/Hughes et al One Battery Park Plaza New York, NY 10004** | | **Contingent Unliquidated Disputed** | **25,000,000.00** |
| **Rutberg & Company LLC Kurt Wilson,Esq -Sweeney et al 983 University Ave Ste. 104C Los Gatos, CA 95032** | **Rutberg & Company LLC Kurt Wilson,Esq -Sweeney et al 983 University Ave Ste. 104C Los Gatos, CA 95032** | | **Contingent Unliquidated Disputed** | **265,000.00** |
| **Ganfer & Shore LLP 360 Lexington Ave #14 Attn: Steven J. Shore, Esq. New York, NY 10016** | **Ganfer & Shore LLP 360 Lexington Ave #14 Attn: Steven J. Shore, Esq. New York, NY 10016** | | | **80,749.27** |
| **Kenneth Palmer as Executor C/o Brian Brick, Esq. - Napoli 350 5th Avenue, Ste. 7413 New York, NY 10018** | **Kenneth Palmer as Executor C/o Brian Brick, Esq. - Napoli 350 5th Avenue, Ste. 7413 New York, NY 10018** | | **Contingent Unliquidated Disputed** | **75,000.00** |
| **Transperfect Attn: Pres or Gen Counsel 3 Park Avenue, 39th Floor New York, NY 10016** | **Transperfect Attn: Pres or Gen Counsel 3 Park Avenue, 39th Floor New York, NY 10016** | | | **22,680.51** |
| **Accusource, LLC Attn: Ryan Kerry 120 E. Uwchlan Ave. Ste 100 Exton, PA 19341** | **Accusource, LLC Attn: Ryan Kerry 120 E. Uwchlan Ave. Ste 100 Exton, PA 19341** | | | **22,500.00** |
| **Factset Attn: Pres or Gen Counsel 601 Merritt 7 3rd Floor Norwalk, CT 06851** | **Factset Attn: Pres or Gen Counsel 601 Merritt 7 3rd Floor Norwalk, CT 06851** | | | **11,559.93** |
| **Fascet Attn: Pres or Gen Counsel 224 W. 30th St, Ste. 203 New York, NY 10001** | **Fascet Attn: Pres or Gen Counsel 224 W. 30th St, Ste. 203 New York, NY 10001** | | | **11,132.00** |

B4 (Official Form 4) (12/07) - Cont.

In re    **NSB Advisors LLC**                                                    Case No.    _15-35009 (CGM)_
_____
Debtor(s)

# LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
(Continuation Sheet)

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| *Name of creditor and complete mailing address including zip code* | *Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | *Nature of claim (trade debt, bank loan, government contract, etc.)* | *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | *Amount of claim [if secured, also state value of security]* |
| **NRSAccuity Inc. dba NRS**<br>**PO Box 7247-8077**<br>**Philadelphia, PA 19170-8077** | **NRSAccuity Inc. dba NRS**<br>**PO Box 7247-8077**<br>**Philadelphia, PA 19170-8077** | | | **4,862.03** |
| **Willis Insurance of MD**<br>**Attn: Pres or Gen Counsel**<br>**12505 Park Potomac Ave Ste 300**<br>**Potomac, MD 20854** | **Willis Insurance of MD**<br>**Attn: Pres or Gen Counsel**<br>**12505 Park Potomac Ave Ste 300**<br>**Potomac, MD 20854** | | | **4,810.43** |
| **Abacus Group**<br>**Attn: Pres or Gen Counsel**<br>**One Front Street, 10th Floor**<br>**San Francisco, CA 94111** | **Abacus Group**<br>**Attn: Pres or Gen Counsel**<br>**One Front Street, 10th Floor**<br>**San Francisco, CA 94111** | | | **3,239.00** |
| **WilmerHale**<br>**7 World Trade Center**<br>**250 Greenwich Street**<br>**New York, NY 10007** | **WilmerHale**<br>**7 World Trade Center**<br>**250 Greenwich Street**<br>**New York, NY 10007** | | | **1,600.00** |
| **Lightower**<br>**Attn: Pres or Gen Counsel**<br>**80 Central Street**<br>**Boxborough, MA 01719** | **Lightower**<br>**Attn: Pres or Gen Counsel**<br>**80 Central Street**<br>**Boxborough, MA 01719** | | | **1,090.00** |
| **Shoretel/Attn: President**<br>**6500 River Place Blvd**<br>**Bldg IV, Suite 200**<br>**Austin, TX 78730** | **Shoretel/Attn: President**<br>**6500 River Place Blvd**<br>**Bldg IV, Suite 200**<br>**Austin, TX 78730** | | | **969.33** |
| **Interactive Data**<br>**Attn: Legal Dept**<br>**32 Crosby Drive**<br>**Bedford, MA 01730** | **Interactive Data**<br>**Attn: Legal Dept**<br>**32 Crosby Drive**<br>**Bedford, MA 01730** | | | **823.50** |
| **Pitney Bowes/Purchase Power**<br>**Attn: Box371874**<br>**500 Ross St, Suite 154-0470**<br>**Pittsburgh, PA 15262** | **Pitney Bowes/Purchase Power**<br>**Attn: Box371874**<br>**500 Ross St, Suite 154-0470**<br>**Pittsburgh, PA 15262** | | | **700.00** |
| **Central Hudson Gas & Electric.**<br>**Attn: Pres or Gen Counsel**<br>**284 South Avenue**<br>**Poughkeepsie, NY 12601** | **Central Hudson Gas & Electric.**<br>**Attn: Pres or Gen Counsel**<br>**284 South Avenue**<br>**Poughkeepsie, NY 12601** | | | **530.00** |
| **Oxford Benefit Mgmt**<br>**Attn: Pres or Gen Counsel**<br>**12 Christopher Way Suite 104**<br>**Eatontown, NJ 07724** | **Oxford Benefit Mgmt**<br>**Attn: Pres or Gen Counsel**<br>**12 Christopher Way Suite 104**<br>**Eatontown, NJ 07724** | | | **444.78** |
| **Dow Jones**<br>**Attn: Susan Frein**<br>**4300 US 1**<br>**South Brunswick Township, NJ 08852** | **Dow Jones**<br>**Attn: Susan Frein**<br>**4300 US 1**<br>**South Brunswick Township, NJ 08852** | | | **412.00** |

**B4 (Official Form 4) (12/07) - Cont.**

In re __**NSB Advisors LLC**__                     Case No.    __15-35009 (CGM)__
                    Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
### (Continuation Sheet)

| (1)<br><br>*Name of creditor and complete mailing address including zip code* | (2)<br><br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br><br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br><br>*Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5)<br><br>*Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
| **Jan Pro Cleaning Systems**<br>**Attn: Pres or Gen Counsel**<br>**15 NOrth Mill Street**<br>**Nyack, NY 10960** | **Jan Pro Cleaning Systems**<br>**Attn: Pres or Gen Counsel**<br>**15 NOrth Mill Street**<br>**Nyack, NY 10960** | | | 394.66 |

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the Manager of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date    __1/5/2015__                     Signature    __/s/ William F. Nicklin__
                                                    **William F. Nicklin**
                                                    **Manager**

*Penalty for making a false statement or concealing property*:  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§  152 and 3571.

**Schedule 2**

11:27 AM
08/19/14
Accrual Basis

## NSB Advisors LLC
## Balance Sheet
### As of May 31, 2014

|                                              | May 31, 14   |
|----------------------------------------------|-------------:|
| **ASSETS**                                   |              |
| **Current Assets**                           |              |
| **Checking/Savings**                         |              |
| Chase Checking Acct                          | 125,658.94   |
| Pershing Management Fee Acc...               | 9,825.93     |
| **Total Checking/Savings**                   | 135,484.87   |
| **Other Current Assets**                     |              |
| **PREPAID**                                  |              |
| Prepaid Airplane Time                        | 24,171.37    |
| Prepaid Compliance Fee                       | 5,505.25     |
| Prepaid Expenses - Other                     | 21,491.80    |
| Prepaid Insurance                            | 24,782.91    |
| Prepaid IT Support                           | 92,620.39    |
| **Total PREPAID**                            | 168,571.72   |
| **Total Other Current Assets**               | 168,571.72   |
| **Total Current Assets**                     | 304,056.59   |
| **Fixed Assets**                             |              |
| Accumulated Depreciation                     | (16,137.16)  |
| Equipment                                    | 16,137.16    |
| **Total Fixed Assets**                       | 0.00         |
| **Other Assets**                             |              |
| Deposit - Rent                               | 13,954.45    |
| Loan Receivable - Bill Nicklin               | 50,000.00    |
| Prepaid Rent (Last Mth)                      | 6,977.22     |
| **Total Other Assets**                       | 70,931.67    |
| **TOTAL ASSETS**                             | 374,988.26   |
| **LIABILITIES & EQUITY**                     |              |
| **Liabilities**                              |              |
| **Current Liabilities**                      |              |
| **Accounts Payable**                         |              |
| Accounts Payable                             | 40,193.46    |
| **Total Accounts Payable**                   | 40,193.46    |
| **Other Current Liabilities**                |              |
| 401 (k) Pension Plan payable...              | (1,600.00)   |
| Deferred fee income                          | 192,780.20   |
| **Total Other Current Liabilities**          | 191,180.20   |
| **Total Current Liabilities**                | 231,373.66   |

11:27 AM
08/19/14
Accrual Basis

## NSB Advisors LLC
## Balance Sheet
### As of May 31, 2014

|  | May 31, 14 |
|---|---|
| **Long Term Liabilities** |  |
| Loan Payable-NSB Holdings, L... | 325,000.00 |
| **Total Long Term Liabilities** | 325,000.00 |
| **Total Liabilities** | 556,373.66 |
| **Equity** |  |
| Distribution - Brown Advisory | (100,434.31) |
| Members Equity Brown Advisory | 100,585.45 |
| Members Equity Others | (145,512.12) |
| Retained Earnings | (83,128.39) |
| Net Income | 47,103.97 |
| **Total Equity** | (181,385.40) |
| **TOTAL LIABILITIES & EQUITY** | 374,988.26 |

**Schedule 3**
List of Pending Actions

| Case Name | Case Number | Court | Adversary's Counsel |
|---|---|---|---|
| NSB Advisors LLC v. C.L. King & Associates, Inc. | No. 12-02927 | FINRA Arbitration (the arbitration has been consolidated, by consent, with C.L. King & Associates, Inc. vs. William Nicklin) | Richard A. Roth, Esq. The Roth Law Firm, PLLC 295 Madison Avenue 22nd Floor New York, New York 10017 |
| EFCO Products Defined Contribution Non-Union Plan, *et al.* v. NSB Advisors LLC v. C.L. King & Associates, Inc. | No. 13-03595 | FINRA Arbitration | **Plaintiff's/Claimant's Counsel**: Barry R. Lax, Esq. Sandra P. Lahens, Esq. Lax & Neville, LLP 1450 Broadway 35th Floor New York, New York 10018  **Counterclaim Respondent's Counsel**: Matthew Farley, Esq. Drinker Biddle & Reath LLP 1177 Avenue of the Americas 41st Floor New York, New York 10036  Christopher Robertson, Esq. Seyfarth Shaw LLP World Trade Center East Two Seaport Lane Suite 300 Boston, MA  02210-2028 |
| Lynn E. Gorguze IRA, *et al.* v.  NSB Advisors LLC | No. 73 148 4 00293 13 | American Arbitration Association (San Diego, California) | Daniel H. Weiner, Esq. Hughes Hubbard & Reed, LLP One Battery Park Plaza New York, New York 10004 |

| Case Name | Case Number | Court | Adversary's Counsel |
|---|---|---|---|
| NSB Advisors LLC v. Lynn E. Gorguze IRA, *et al* | No. 37-2014-00033848-CU-PACTL | Superior Court of the State of California, County of San Diego | Daniel H. Weiner, Esq. Hughes Hubbard & Reed, LLP One Battery Park Plaza New York, New York 10004 |
| Schrag *et al*. v. NSB Advisors LLC | No. 13-3596 | FINRA Arbitration | **Plaintiff's/Claimant's Counsel**: Samuel B. Edwards, Esq. Shepherd Smith Edwards & Kantas LLP 1010 Lamar St. Suite 900 Houston, TX 77002  **Counterclaim Respondent's Counsel**: Matthew Farley, Esq. Drinker Biddle & Reath LLP 1177 Avenue of the Americas 41st Floor New York, New York 10036  Christopher Robertson, Esq. Seyfarth Shaw LLP World Trade Center East Two Seaport Lane Suite 300 Boston, MA 02210-2028 |

| Case Name | Case Number | Court | Adversary's Counsel |
|---|---|---|---|
| Carroll *et al.* v. NSB Advisors LLC | No. 13-3706 | FINRA Arbitration | **Plaintiff's/Claimant's Counsel:**<br>Samuel B. Edwards, Esq.<br>Shepherd Smith Edwards<br>  & Kantas LLP<br>1010 Lamar St.<br>Suite 900<br>Houston, TX 77002<br><br>**Counterclaim Respondent's Counsel**:<br>Matthew Farley, Esq.<br>Drinker Biddle & Reath LLP<br>1177 Avenue of the Americas<br>41st Floor<br>New York, New York 10036<br><br>Christopher Robertson, Esq.<br>Seyfarth Shaw LLP<br>World Trade Center East<br>Two Seaport Lane<br>Suite 300<br>Boston, MA  02210-2028 |
| Thomas Reed v. NSB Advisors LLC and William F. Nicklin | No. 1425016298 | JAMS Arbitration | Lisa A. Knopf, Esq.<br>Law Office of Raymond W. Ganim<br>2192 Main Street<br>Stratford, Connecticut  06615<br><br>Fred Knopf, Esq.<br>Knopf Law LLC<br>72 Morehouse Road<br>Easton, CT 06612 |
| Utility Service Holding Company, Inc. v. C.L. King & Associates, Inc., Candace King Weir | No. 14-00343 *Claims against NSB and W. Nicklin withdrawn but subject to tolling agreement | FINRA Arbitration | Brian N. Smiley, Esq.<br>Smiley Bishop & Porter, LLP<br>1050 Crown Pointe Parkway<br>Suite 1250<br>Atlanta, Georgia 30338 |

## Exhibit B

**RESOLUTIONS ADOPTED BY**
**UNANIMOUS CONSENT OF THE**
**VOTING MEMBER OF NSB ADVISORS LLC**
**IN LIEU OF A SPECIAL MEETING**

The undersigned, being the voting member of NSB Advisors LLC, a Maryland limited liability company (the "Company") hereby consents to the adoption of the following resolutions taking or authorizing the actions specified:

"RESOLVED, that the filing by the Company of a petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101, *et seq.*, now in effect or as hereinafter amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York be, and it hereby is, authorized and approved; and it is

FURTHER RESOLVED, that the Company is hereby authorized to execute a petition for relief under the Bankruptcy Code ("Petition"); and it is

FURTHER RESOLVED, that any officer or manager of the Company be, and hereby is, authorized to execute and file as officer or manager of the Company the Petition; and it is

FURTHER RESOLVED, that any officer or manager of the Company be, and hereby is, authorized, on behalf of the Company, to retain the law firm of Halperin Battaglia Raicht, LLP, as bankruptcy counsel to the Company, to render legal services to, and to represent the Company in connection with such proceeding and other related matters in connection therewith, on such terms as such officer or manager shall approve; and it is

FURTHER RESOLVED, that any officer or manager of the Company be, and hereby is, authorized, to take any and all such further action to retain any other professionals and/or consultants in the Chapter 11 bankruptcy case on behalf of the Company and to execute and deliver any and all such further retainer agreements, instruments and documents as necessary or desirable in order to fully carry out the intent and accomplish the purposes hereof; and it is

FURTHER RESOLVED, that all acts lawfully done or actions lawfully taken by any officer or manager of the Company by virtue of these resolutions are hereby in all respects ratified, confirmed and approved and each officer and manager of the Company, is hereby authorized and directed to execute and deliver any and all

agreements, certificates, instruments and documents, and to do and perform all acts and things, as they may, in their discretion, deem necessary or appropriate to carry out the intent of, and to accomplish the purposes of, the foregoing Resolutions and the transactions contemplated hereby.

Dated: January 2, 2015

NSB Holdings Group LLC

*/s/ William F. Nicklin*
William F. Nicklin, Manager