Alan D. Halperin, Esq.
Donna H. Lieberman, Esq.
**HALPERIN BATTAGLIA RAICHT, LLP**
40 Wall Street – 37th Floor
New York, New York 10005
Phone:  (212) 765-9100; Fax: (212) 765-0964
ahalperin@halperinlaw.net
dlieberman@halperinlaw.net

*Proposed Counsel to the Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

In re:

**NSB ADVISORS LLC,**
Tax I.D. No. 80-0377379

                                            Debtor.

Chapter 11 Case
Case No. 15- 35009 (CGM)

---------------------------------------------------------------x

**NSB ADVISORS LLC**,

                                          Plaintiff,

-against-

**C.L. King & Associates, Inc.**,

                                          Defendant.

Adv. Pro. No. 15- _____ (CGM)

---------------------------------------------------------------x

## VERIFIED ADVERSARY COMPLAINT

NSB Advisors LLC, the debtor and debtor-in-possession (the "Plaintiff," "NSB" or the "Debtor"), by and through its proposed counsel, Halperin Battaglia Raicht, LLP, as and for its Verified Adversary Complaint against C.L. King & Associates, Inc. (the "Defendant" or "C.L. King") avers as follows:

### PARTIES, JURISDICTION AND VENUE

1. The Plaintiff, NSB, is a debtor and debtor-in-possession limited liability company organized and existing under the laws of the State of Maryland.  NSB is a registered

investment adviser with offices at 200 Westage Business Center Drive, Suite 228, Fishkill, New York 12524, which commenced operation in or about 2009. NSB's business model is intended to serve the needs of corporate and high net worth individual investors by advising clients about buying, selling and otherwise investing in securities and instruments. William F. Nicklin ("Mr. Nicklin") is the manager of the Debtor.

2. The Defendant, C.L. King, is a corporation organized and existing under the laws of the State of New York.

3. On January 5, 2015, (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") and has continued in the management of its business and property as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

4. No creditors' committee or trustee has been appointed in this case.

5. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

6. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7. Venue of this proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

8. The Debtor's financial difficulties stem from a confluence of events largely related to the 2012 actions of C.L. King.[1] C.L. King, while repeatedly assuring the Debtor of C.L. King's financial resources and ability to service NSB's growing client portfolios, began making unusual and improper demands upon NSB in early 2012. Among other things,

---

[1] The events that led to the Debtor's bankruptcy filing are also discussed in the Affidavit of Mr. Nicklin pursuant to Local Bankruptcy Rule 1007-2, which has been filed with this Court in the main case and is hereby incorporated by reference.

{00232196.2 / 1056-001}    2

C.L. King demanded that NSB reduce its clients' collective combined debit balances by $231 million within six weeks. To meet those demands, NSB was forced to liquidate positions in relatively thinly traded stocks. C.L. King also pressured the Debtor's clients directly, notifying them of burdensome new requirements for NSB-managed accounts at C.L. King and urging them to move their accounts out of C.L. King.

9. In addition, C.L. King alerted the market that NSB's positions were for sale by contacting certain market participants about potential block sales and indirectly by forcing NSB to seek potential block trades. C.L. King also demanded that NSB alter its trading strategy, in violation of the services agreement between the parties (the "Services Agreement"), which, when effected, adversely impacted the accounts of both NSB's clients and Mr. Nicklin with C.L. King. These factors contributed to the downward price decline of securities in the Debtor's portfolio, which in turn, along with C.L. King improperly compelling NSB's clients to transfer their accounts out of C.L. King, in violation of C.L. King's obligations as custodian under the Services Agreement, resulted in NSB's loss of more than one billion dollars in assets under management.

10. The cumulative effect of C.L. King's actions was a significant reduction in the number and value of accounts that the Debtor had under management, and an attendant reduction in the Debtor's income from management fees. The Services Agreement between the Debtor and C.L. King was terminated, and Pershing Advisor Solutions LLC, a subsidiary of Bank of New York Mellon, currently serves as custodian for the assets and investments managed by the Debtor.

11. Prior to the events of 2012, Mr. Nicklin had maintained his personal investment account with C.L. King. C.L. King's demand that NSB decrease its combined debit

balance by $231 million in less than six weeks (which could only be accomplished through massive liquidation of long stock positions), prevented Mr. Nicklin from selling positions from his own account to meet C.L. King's demands on him, due to rules forbidding an investment advisor from trading ahead of customers. After C.L. King's actions contributed to depressed prices and margin calls in Mr. Nicklin's account, C.L. King took advantage of the depressed prices that it had caused and/or significantly contributed to by engaging in self-dealing and selling Mr. Nicklin's portfolio to its own principal, Candace King Weir, at a 20% discount to the market.

### *(b) The FINRA Arbitration Proceedings*

12. In August of 2012, C.L. King filed an arbitration proceeding against Mr. Nicklin personally, for monies he allegedly owed to C.L. King, relating to losses in his personal margin account. Mr. Nicklin filed counter-claims against C.L. King, alleging, among other things, that those losses were caused by C.L. King's improper actions.

13. NSB thereafter commenced a separate arbitration proceeding against C.L. King relating to C.L. King's breach of its contractual relationship with NSB, tortious interference with NSB's relationships with its clients, gross negligence and fraud. In its answer to NSB's statement of claim, C.L. King asserted that NSB's claims were derivative from and nearly identical to Mr. Nicklin's counter-claims against C.L. King. NSB's claims arise out of the same facts and events as Mr. Nicklin's counter-claims against C.L. King, specifically, the demands C.L. King made upon the Debtor in early 2012 to address C.L. King's own net-capital issues. Among other things, and as discussed above, C.L. King made demands on NSB to change its trading strategy and decrease the combined debit balances of all of its client accounts, including Mr. Nicklin's, by over $230 million in less than six weeks. C.L. King's actions and its efforts to

force NSB's clients to move their accounts in a precipitous manner breached numerous provisions of the Services Agreement between NSB and C.L. King and breached C.L. King's obligations to NSB's clients, including Mr. Nicklin, under the clients' Customer Agreements with C.L. King.

14. Both of the arbitrations were brought before FINRA (the Financial Industry Regulatory Authority) and FINRA has consolidated the two arbitrations, which are proceeding under case number 12-02927 (the consolidated arbitrations being the "FINRA Arbitration"). Witness testimony before the arbitration panel has been ongoing, and after a break for the holidays, is scheduled to resume on January 12, 2015 for three days. The next scheduled hearing dates after that are in March of 2015. There are additional testimony dates scheduled in the FINRA Arbitration through October of 2015.

*(c) The Debtor's Bankruptcy Filing and the Proposed Sale*

15. While the Debtor has made progress in stabilizing its business, it has been unable to fully recover from the events of 2012. The number and value of accounts under management with the Debtor are still significantly less than they were at the beginning of 2012, while the costs of litigation have significantly increased the Debtor's expenses.

16. On or about the Petition Date, the Debtor filed a motion seeking, among other things, the approval of proposed bidding procedures and a form of sale agreement, and the scheduling of an auction and a sale hearing (the "Sale Motion"). The Debtor entered Chapter 11 with a stalking horse bidder, and hopes to maximize value for the estate and creditors through a sale of its assets within the first few months of this case.

17. As set forth in the Sale Motion, the most valuable asset of a business of the Debtor's type is its client base. However, the Debtor's clients have the right to change

financial advisors at any time, and cannot be compelled to transfer the management of their accounts to a purchaser of the Debtor's assets.

18. Because most of the Debtor's clients are businesses and individuals that are clients of the Debtor based on the strength of their relationship with Mr. Nicklin, the expectation is that many of those clients will follow Mr. Nicklin, which is the normal industry course. The stalking horse bidder has therefore engaged in negotiations with Mr. Nicklin personally regarding a possible employment relationship. The proposed purchaser's strategy offers a significant benefit to the Debtor, as a key component of the stalking horse bid is a payment to the Debtor equal to 20% of the fee income realized from accounts that the buyer acquires and maintains from the Debtor, for a period of two years after the sale closes.

19. The proposed sale is subject to an auction process and higher and better offers. In his capacity as the Debtor's manager, Mr. Nicklin is prepared to entertain offers from other interested parties for the Debtor's assets. In addition, if another prospective bidder is interested in offering him employment or other relationship in order to increase the likelihood of acquiring the Debtor's clients, and hence, increasing the amounts payable to the Debtor under the sale agreement, Mr. Nicklin is prepared to consider that as well. In any case, Mr. Nicklin is critical to the management of the Debtor's sale process.

**FIRST CAUSE OF ACTION FOR DECLARATORY JUDGMENT
AS TO APPLICATION OF THE AUTOMATIC STAY**

20. Plaintiff re-alleges and incorporates the allegations contained in all the foregoing paragraphs as if set forth fully herein.

21. There exists and actual controversy between the Plaintiff and Defendant.

22. C. L. King has been notified in writing of the Debtor's Chapter 11 case.

{00232196.2 / 1056-001}    6

23. The automatic stay imposed under § 362(a) of the Bankruptcy Code applies to bar C.L. King's activities to commence or continue proceedings to recover a claim against Mr. Nicklin and his property, that arose before the commencement of the Debtor's Chapter 11 case.

24. C.L. King's proceedings against Mr. Nicklin prevent the Debtor from conducting its business in the ordinary course.

25. C.L. King's proceedings against Mr. Nicklin violate the Debtor's automatic stay imposed under § 362(a) of the Bankruptcy Code.

26. C.L. King's violation of the automatic stay threatens to irreparably harm the Debtor.

27. The Debtor is entitled to a declaratory judgment against C.L. King that its activities to commence or continue proceedings to recover a claim against Mr. Nicklin and his property, that arose before the commencement of the Debtor's Chapter 11 case are in violation of the automatic stay.

28. The Debtor is entitled to a declaratory judgment that the FINRA Arbitration shall be stayed under § 362(a) of the Bankruptcy Code in its entirety.

29. The Plaintiff lacks an adequate remedy at law.

### SECOND CAUSE OF ACTION FOR INJUNCTIVE RELIEF

30. Plaintiff re-alleges and incorporates the allegations contained in all the foregoing paragraphs as if set forth fully herein.

31. As a result of C.L. King's activities to commence or continue proceedings to recover a claim against Mr. Nicklin and his property, that arose before the commencement of

the Debtor's Chapter 11 case, the Debtor's rights under §§ 1107 and 1108 of the Bankruptcy Code have been significantly impaired.

32. As a result of C.L. King's conduct, the Debtor and its estate have been irreparably harmed and will continue to suffer harm if C.L. King's activities to commence or continue proceedings to recover a claim against Mr. Nicklin and his property that arose before the commencement of the Debtor's Chapter 11 case are not enjoined.

33. Plaintiff is entitled to a judgment preliminarily enjoining and restraining C.L. King, pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure, from taking any further action to commence or continue proceedings to recover a claim against Mr. Nicklin and his property that arose before the commencement of the Debtor's Chapter 11 case.

34. Absent a judgment preliminarily enjoining and restraining C.L. King, pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure, from taking any further action to commence or continue proceedings to recover a claim against Mr. Nicklin and his property that arose before the commencement of the Debtor's Chapter 11 case, the Debtor risks being collaterally estopped with regard to the claims that it has brought against C.L. King.

35. Absent a judgment preliminarily enjoining and restraining C.L. King, pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure, from taking any further action to commence or continue proceedings to recover a claim against Mr. Nicklin and his property that arose before the commencement of the Debtor's Chapter 11 case, the Debtor risks *res judicata* with regard to the claims that it has brought against C.L. King.

36. Plaintiff is entitled to a judgment preliminarily enjoining the FINRA Arbitration in its entirety.

37. Plaintiff has a reasonable likelihood of success on the merits and the hardship of denying relief to Plaintiff vastly outweighs the harm to the Defendant such that Plaintiff is entitled to a temporary restraining order (the "TRO") pending the hearing on the Plaintiff's request for preliminary injunction. The TRO is imperative because hearings would otherwise go forward in the FINRA Arbitration beginning on January 12, 2015.

38. The Plaintiff lacks an adequate remedy at law.

**WHEREFORE**, the Plaintiff respectfully requests that this Court grant it the following relief:

(a) On the First Cause of Action that: (1) the automatic stay enjoins C.L. King from commencing or continuing proceedings to recover a claim against Mr. Nicklin and his property that arose before the commencement of the Debtor's Chapter 11 case, including the FINRA Arbitration; and (2) the FINRA Arbitration is stayed in its entirety.

(b) On the Second Cause of Action both a temporary restraining order and preliminary injunction enjoining C.L. King from (1) commencing or continuing proceedings to recover a claim against Mr. Nicklin and his property that arose before the commencement of the Debtor's Chapter 11 case, including the FINRA Arbitration; (2) continuing any portion of the FINRA Arbitration proceedings; and

(c) Such other and further relief as this Court deems just and proper.


Dated: Fishkill, New York
       January 5, 2015

                                              **NSB ADVISORS LLC,**
                                              Debtor and Debtor-in-Possession

                                              By: */s/ William F. Nicklin*
                                                     William F. Nicklin, Manager

Filed by:

**HALPERIN BATTAGLIA RAICHT, LLP**

By:  */s/ Alan D. Halperin*
    Alan D. Halperin, Esq.
    Donna H. Lieberman, Esq.
    40 Wall Street, 37th Floor
    New York, New York 10005
    Phone:  (212) 765-9100; Fax: (212) 765-0964
    ahalperin@halperinlaw.net; dlieberman@halperinlaw.net

*Proposed Counsel to the Debtor and Debtor- in-Possession*

## VERIFICATION

STATE OF NEW YORK    )
                     )SS.:
COUNTY OF DUTCHESS   )

Debra A. McFadden
Notary Public, State of New York
Registration #01MC6146800
Qualified in Dutchess County
Commission Expires May 22, 2016

William F. Nicklin, being duly sworn, deposes and states:

I am the manager of plaintiff NSB Advisors LLC. I have read the foregoing Verified Adversary Complaint and know the contents thereof; that the same is true to my knowledge, except as to the matters stated to be alleged upon information and belief, and that as to those matters I believe them to be true. The grounds of my belief as to matters not stated to be upon my knowledge are based upon a review of documents, correspondence and other relevant data in NSB Advisors LLC's files.

_____
William F. Nicklin

Sworn to me before this
5th day of January, 2015

_____
Notary Public

{00232169.2 / 1056-001}