Alan D. Halperin, Esq.
Donna H. Lieberman, Esq.
**HALPERIN BATTAGLIA RAICHT, LLP**
40 Wall Street, 37th Floor
New York, New York 10005
Phone: (212) 765-9100; Fax: (212) 765-0964
ahalperin@halperinlaw.net
dlieberman@halperinlaw.net

*Proposed Counsel to the Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

**NSB ADVISORS LLC,**

       Debtor.
-------------------------------------------------------------x

Chapter 11 Case
Case No. 15-35009 (CGM)

**DEBTOR'S MOTION FOR ORDERS (I) SCHEDULING HEARING TO CONSIDER (a) SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, SUBJECT TO HIGHER AND BETTER OFFERS AND (b) ASSUMPTION AND ASSIGNMENT OF LEASES AND EXECUTORY CONTRACTS; (II) SCHEDULING HEARING TO CONSIDER APPROVAL OF STALKING HORSE AGREEMENT AND EXPENSE REIMBURSEMENT, AND BIDDING PROCEDURES FOR THE CONDUCT OF AN AUCTION; (III) FIXING A CURE CLAIMS BAR DATE WITH RESPECT TO THE ASSUMPTION AND ASSIGNMENT OF LEASES AND EXECUTORY CONTRACTS; (IV) FIXING MANNER AND NOTICE OF SALE HEARING; (V) AUTHORIZING THE DEBTOR TO SELL ASSETS, FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, SUBJECT TO HIGHER AND BETTER OFFERS; (VI) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF LEASES AND EXECUTORY CONTRACTS; AND (VII) GRANTING RELATED RELIEF**

TO THE HONORABLE CECELIA G. MORRIS,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

    NSB Advisors LLC, the debtor and debtor-in-possession herein ("NSB" or the "Debtor"), by its proposed counsel, Halperin Battaglia Raicht, LLP, makes this motion (the "Motion"), pursuant to sections 105, 363 and 365 of Title 11 of the United States Code, as amended (the "Bankruptcy Code"), for entry of orders:

{00229287.5 / 1056-001 }

1. fixing the date and time of a hearing (the "Sale Hearing") to consider:

    a. approval of a certain asset purchase agreement and ancillary documents (collectively, the "Sale Agreement") substantially in the form attached hereto as **Exhibit A,** by and between the Debtor, as seller, and Emancipation Management LLC ("Emancipation" or the "Buyer"), dated as of January 2, 2015, pursuant to which, among other things, the Debtor proposes to sell substantially all of its assets (the "Assets") to Buyer or its designee, free and clear of all liens, claims and encumbrances, and subject to higher or better offers, and

    b. approval of the assumption and assignment to the Buyer, or its designee, of certain executory contracts and unexpired leases of the Debtor related to the Assets (the "Assumed Contracts"). A schedule of the Assumed Contracts, together with (among other things) the cure costs associated with each (if any) calculated in accordance with the Debtor's books and records, is attached to the proposed Bidding Procedures Order (as defined herein), and the proposed Bidding Procedures Order is attached to this Motion as **Exhibit B.** The Buyer shall have the right to make final determinations as to which executory contracts and leases it wishes to have assumed and assigned no later than three (3) business days prior to the Closing Date;

2. fixing the date and time of a hearing (the "Bidding Procedures Hearing") to consider approval of an expense reimbursement of 3% of the cash purchase price payable to the Debtor on the Closing Date (the "Expense Reimbursement"), and bidding procedures (the "Bidding Procedures") to be utilized in connection with the auction sale of the Assets, to be held prior to the Sale Hearing (the "Auction"), and, in connection therewith, approving the Expense Reimbursement and Bidding Procedures,

3. fixing the last date by which the non-debtor parties to the Assigned Contracts and Leases must file Cure Claims (as defined herein) with respect to the Debtor's assumption and assignment to Buyer, or its designee, of the Assigned Contracts and Leases,

4. fixing the manner and form of notice of the Sale Hearing, and

5. approving the Sale Agreement and authorizing the sale of the Assets pursuant to section 363(b) of Title 11 of the United States Code, as amended (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), free and clear of claims, liens and other encumbrances and, in connection therewith, approving the assumption and assignment of the Assigned Contracts and Leases pursuant to section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

In support thereof, the Debtor respectfully represents, as follows:

## Introduction

1. By this Motion, the Debtor seeks entry of an Order approving the sale of the Assets, free and clear of all liens, claims and encumbrances (the "Asset Sale"), as well orders granting the related relief described above, all of which is in furtherance of the Debtor's efforts to maximize the value of its assets for the benefit of its estate and creditors.

2. The Debtor and its principal, William Nicklin ("Mr. Nicklin")[1], have been soliciting bids for the Debtor's assets for more than five months, and have recently received an offer from the Buyer to purchase the Assets (the "Offer"). The proposed sale under the Offer shall be subject to higher and better offers, which may be made at the Auction to be scheduled prior to the Sale Hearing, provided that a Qualified Bid is received pursuant to the Bidding Procedures (all as described herein). For the reasons set forth in this Motion, the Debtor requests that the Court approve the Expense Reimbursement, establish Bidding Procedures for the conduct of the Auction, schedule the Auction and schedule the Sale Hearing.

3. The proposed sale of the Assets is the result of substantial, good faith, arms' length negotiation and provides a vehicle for the Debtor to maximize asset values for the benefit of its creditors. Accordingly, the Debtor respectfully requests that the Court schedule the Sale Hearing and grant the other forms of preliminary relief requested, in accordance with the pre-fixed order scheduling hearing.

## Jurisdiction and Venue

4. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012. The statutory predicates for the relief sought herein are sections 105(a), 363(b),

---

[1] The importance of Mr. Nicklin to the marketing process and his proposed role with the Buyer is discussed in paragraphs 15 and 19 of this Motion.

{00229287.5 / 1056-001}    3

(f), (m) and (n) of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004 and 9014. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §1409.

**Background**

5. On January 5, 2015 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code and has continued in the management and operation of its business and property as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

6. No creditors' committee or trustee has been appointed in this case.

7. The Debtor is a registered investment adviser with offices at 200 Westage Business Center Drive, Suite 228, Fishkill, New York 12524, and it commenced operations in 2009. NSB was established to serve the needs of corporate investors and individual investors with substantial net worth, advising them with respect to buying and selling securities and instruments.

8. NSB does not hold stocks or other securities on behalf of its clients, but directs and manages client accounts, including placing transaction orders with brokers, dealers and issuers. Pershing Advisor Solutions LLC ("Pershing") currently serves as custodian for the assets and investments managed by the Debtor. Those assets and investments belong to the clients, and are not property of the Debtor or the Debtor's estate.

9. The Debtor's financial difficulties stem from a confluence of events that occurred in 2012, which are described in some detail in the Rule 1007-2 Affidavit of Mr. Nicklin filed with the Debtor's petition (the "Rule 1007 Affidavit"). In early 2012, NSB had over 700 client accounts, and assets under management in excess of $1.2 billion. However, in the first and second quarters of 2012, NSB experienced a severe decline in its clients' portfolios caused by, or contributed to, by the actions of its then custodian, C. L. King & Associates ("C.L. King").

10. The Debtor has worked very hard since 2012 to stabilize its business, but the events of 2012 resulted in a significant decline in NSB's client base and in the amount of assets under NSB's management, which taken together are the basis of NSB's income. Currently, the Debtor has approximately 410 accounts, 355 of which are managed, and assets under management of approximately $143 million, and uses Pershing as its custodian and broker.

11. The Debtor has commenced arbitration proceedings against C.L. King in connection with the events of 2012, and that arbitration is pending as of the Petition Date. In addition, as set forth in the Rule 1007 Affidavit, the Debtor has been addressing arbitrations brought by a handful of its former clients, also largely focused on the events of 2012. The Debtor has worked diligently to resolve the arbitrations, and in fact, some settlements have been reached. But the C.L. King action and the remaining client arbitrations have resulted in considerable expense and disruption to the Debtor.

12. By the summer of 2014, the Debtor and its management were weighing the company's alternatives, as the costs of litigation were overwhelming the Debtor's reduced income base. The Debtor therefore began trying to find the path that would best serve its creditors and its clients. However, as is often the case in the financial services industry, the Debtor has very little in the way of "hard" assets. The value of the business lies principally in its clients and the fees generated by managing the portfolios of those clients, and those clients are free to choose their own financial advisors.

13. The Debtor and its manager, Mr. Nicklin, together determined that the best way to realize value for creditors was to identify a buyer for the Debtor's business that could competently service NSB's clients and that would be willing to pay the Debtor some percentage of the income generated by those clients that chose to move their portfolios to the buyer.

**The Marketing Process**

14. Prior to the Petition Date, the Debtor worked to identify an acquirer for its assets and business. To that end, the Debtor prepared financial and operational materials for dissemination to

potential acquirers of all the Debtor's assets, and contacted three likely candidates, including financial advisory firms and hedge funds.

15. Three parties evidenced an interest in conducting due diligence, and the Debtor provided all three with the financial and operational materials it had prepared as well as such additional information as the parties requested. In addition, Mr. Nicklin, the Debtor's manager, made himself available to answer questions, address concerns and talk about how a sale might be structured. It quickly became apparent that the prospective purchasers viewed Mr. Nicklin himself as an integral part of any transaction, as most of the Debtor's clients are businesses and individuals that were first Mr. Nicklin's personal clients.

16. To date, the Buyer is the only party to make a formal written Offer to acquire the Debtor's assets. The Offer is the result of extensive, arms' length negotiations, and the Debtor believes that the Offer is fair and reasonable. The Offer has been memorialized in the Sale Agreement for which the Debtor now seeks approval. As the Sale Agreement makes clear, the Debtor intends to submit the Offer to the rigors of the marketplace; the sale of the Debtor's Assets is subject to higher and better offers, and the Debtor is proposing Bidding Procedures and asking the Court to schedule an Auction.

### **The Sale Agreement**[2]

17. The Sale Agreement is a comprehensive purchase and sale agreement setting forth all the rights and obligations by and between the Debtor and the Buyer. The Sale Agreement provides a vehicle for the disposition of most of the Debtor's operating assets and, at the same time, enables the Debtor to canvass the marketplace for any higher and better offers for the Assets.

18. The following is a general description of the salient terms of the Sale Agreement. Capitalized terms not defined herein shall have the meanings ascribed to them in the Sale Agreement:[3]

---

[2] The Sale Agreement attached hereto is in substantially final form. Certain of the exhibits and schedules will be filed with the Court no later than three business days prior to the Bidding Procedures Hearing.

{00229287.5 / 1056-001}    6

Purchased Assets: The Sale Agreement contemplates the Debtor will sell, convey, assign and transfer to the Buyer all of the Assets (other than the Excluded Assets) on the terms and subject to the conditions set forth in the Sale Agreement. The Assets include, among other things, (a) Fixed Assets, (b) Intellectual Property, to the extent transferrable, (c) rights and benefits under Assumed Contracts, (d) rights under warranties, (e) claims and causes of action under Chapter 5 of the Bankruptcy Code and under warranties, (f) books and records, and (g) the good-will of the business.

Purchase Price: The purchase price for the Assets is (a) cash on the Closing Date in the amount of $25,000, plus (b) cure costs on any Assigned Contracts and Leases, plus (c) the Revenue Payments, which are equal to twenty percent (20%) of any and all fees paid to the Buyer for two years after the Closing Date, by any person who is a party to a customer agreement with the Seller as of the date of the Sale Agreement (collectively, the "Purchase Price").

Assumed Liabilities: The Buyer is not assuming any liabilities of the Debtor other than (a) liabilities arising from and after the Closing under any Assumed Contracts, and (b) such other liabilities as may be specifically identified in the Sale Agreement.

Assigned Contracts and Leases. The Sale Agreement contemplates that certain executory contracts and leases will be assumed and assigned to the Buyer at Closing (the "Assumed Contracts"). The Buyer shall be responsible for the payment of any Cure Claims[4] associated with Assumed Contracts, provided, however, that the Buyer has until three (3) business days prior to the Closing to determine which executory contracts and leases are Assumed Contracts.

Excluded Assets: The Debtor is not selling to the Buyer, and the Assets do not include, any asset specifically identified as being an Excluded Asset set forth in Section 2.02 of the Sale Agreement. Among other things, cash, accounts receivable and certain claims and causes of action are not being sold.

Conditions to Closing: The Sale Agreement provides that the conditions to closing include, among other things, (a) entry of a final non-appealable order by the Bankruptcy Court authorizing the sale of the Assets to the Buyer, pursuant to the terms of the Sale Agreement; (b) representations and warranties are true and correct; and (c) no breach of the Sale Agreement.

**Disclosure Regarding Potential Related Agreement**

---

[3] The following is merely a summary of the Sale Agreement and is qualified in its entirety by the actual, express terms of the Sale Agreement. To the extent there is any discrepancy between this summary and the terms of the Sale Agreement, the terms of the Sale Agreement shall control.

[4] As discussed herein, pursuant to the pre-fixed order scheduling hearing, the Debtor requests that the Court fix a bar date for the assertion of any Cure Claims by the counterparty to any Assumed Contracts.

19. The Buyer and the Debtor's principal, Mr. Nicklin, have discussed Mr. Nicklin's employment by or other future relationship with the Buyer, in the event that the Buyer is the successful bidder for the Assets. The Buyer has engaged in such negotiations because of its stated belief that Mr. Nicklin's association with the new company will be critical to many of the Debtor's clients moving their accounts to that company. Mr. Nicklin has agreed with the Buyer that the Buyer shall pay Mr. Nicklin initial annual compensation of a salary not to exceed $100,000 plus a share of the annual bonus pool that will be determined by net profits, if any.

20. As stated in the summary of salient terms of the Sale Agreement above, a key component of the Purchase Price (and likely the most significant part of the Purchase Price) is the Revenue Payments that will be made over time, based upon the income realized by the Buyer from those of the Debtor's current clients who chose to move their accounts to the Buyer. It is anticipated that the Debtor's clients are more likely to move their accounts to the Buyer if Mr. Nicklin is associated with the Buyer, and that Mr. Nicklin's association with the Buyer will therefore financially benefit both the Buyer and the Debtor.

21. Mr. Nicklin's future relationship with the Buyer is conditioned upon the Buyer being the winning bidder at the Auction, and the Buyer is aware that Mr. Nicklin is prepared to consider affiliating himself with bidders other than the Buyer.

### The Proposed Bidding Procedures

22. The Debtor and the Buyer recognize that the sale of the Assets must be subject to higher and better offers pursuant to applicable bankruptcy law. The Buyer is prepared to consent to a competitive bidding process, provided that (i) it receives a modest expense reimbursement, equal to three percent of the $25,000 Purchase Price being paid to the Debtor at Closing (the "Expense Reimbursement"), in the event that it is not the winning bidder and a sale to another party closes and (ii)

appropriate bidding procedures are put in place. Set forth below are the proposed Bidding Procedures to be employed with respect to the Auction (if any):

   a. Alternative Bid Deadline. All alternative bids must be submitted to Debtor's counsel, Halperin Battaglia Raicht, LLP, 40 Wall Street, 37th Floor, New York, New York 10005, Attn: Donna H. Lieberman, Esq., by **February 27, 2015** at noon (ET) (the "Alternative Bid Deadline").

   b. Due Diligence. To the extent any proposed bidder wants to undertake any due diligence with respect to the Assets, such proposed bidder must execute a non-disclosure agreement (to the extent such an agreement has not been previously executed and delivered by such proposed bidder) in form and substance acceptable to the Debtor prior to undertaking any such due diligence and all such due diligence must be undertaken and completed prior to the Alternative Bid Deadline.

   c. Qualified Bid. Only alternative bids that meet with the following qualifications will be considered a "Qualified Bid":

      i. the bid must be received by Debtor's counsel as detailed in paragraph (a), above, by the Alternative Bid Deadline;

      ii. The bid must :

         A. Be in writing;

         B. State that it is irrevocable;

         C. Be accompanied by a duly executed sale agreement, marked to reflect variations to the Sale Agreement;

         D. Be accompanied by a down payment deposit in immediately available funds of not less than ten (10%) percent of the proposed purchase price (the "Deposit"). The Deposit will be subject to forfeiture upon a breach by the bidder and non-refundable if the bidder is selected as a Successful Bidder (as defined below) and fails to consummate the purchase (other than as a result of a breach by the Debtor). The Deposit will be refundable if the bidder is not selected as a Successful Bidder;

         E. State that it is not subject to any further due diligence or financing; and

      iii. The proposed purchase price for a Qualified Bid shall be an amount in cash of at least the sum of (A) the Purchase Price as defined in the Sale Agreement (the "Stalking Horse Bid"), plus (B) the amount of the Expense Reimbursement plus (C) $5,000 (the "Subsequent Incremental Bid Amount")((A), (B) and (C), collectively, the "Initial Overbid" and (B) and (C) to be payable at Closing). In the event a bidder (including the Buyer) is the

  second best bidder (the "<u>Back-Up Bidder</u>"), its bid shall be irrevocable and such bidder shall remain ready, willing and able to purchase the Assets through the closing of the transaction with the Successful Bidder (subject to the terms and conditions of such Backup Bidder's last submitted bid);

 iv. Without limiting the generality of the foregoing, such bid shall be for substantially all of the Assets and the Assumed Liabilities and any liabilities to be assumed under the Sale Agreement on an as-is, where-is basis and shall not include any due diligence, financing or other contingency;

 v. The bid must be expressly made subject to the Debtor's obligations to pay the Expense Reimbursement pursuant to the terms of the Sale Agreement;

 vi. Simultaneously with the delivery of the Deposit and the executed Sale Agreement, an entity submitting an alternative bid shall deliver financial information evidencing that such party has the financial wherewithal to consummate the proposed transaction on the terms proposed. Such financial information may include current audited or verified financial statements and/or a letter from a depository institution indicating the ability to close on a proposed transaction. In the event the financial information pertains to the parent or other equityholder of an acquisition affiliate, the bid of the affiliate shall be guaranteed by the parent or other equityholder;

 vii. The entity submitting an alternative bid shall also provide evidence or affirm under oath that all necessary approvals have been obtained authorizing the submission of the bid by such entity;

 viii. Only those bids bidders having submitted Qualified Bids (a "<u>Qualified Bidder</u>") will be permitted to participate in the Auction. The Debtor's counsel, upon consultation with the Committee (if any), will promptly notify each alternative bidder after the Alternative Bid Deadline whether it is a Qualified Bidder. The Auction shall occur no later than two (2) business days following the Alternative Bid Deadline. Buyer shall be deemed a Qualified Bidder.

 d. <u>Auction Procedures and Bidding Increments</u>.

 i. In the event one or more Qualified Bids (in addition to the Stalking Horse Bid) are received by the Debtor prior to the Alternative Bid Deadline, the Debtor will conduct the Auction. No later than one business day prior to the Auction, the Debtor shall circulate to each Qualified Bidder copies of the Qualified Bid determined to be the highest or best Qualified Bid submitted as of the Alternative Bid Deadline, and that will constitute the opening bid at the Auction.

 ii. At the Auction (A) all bids shall be made and received in one room, on an open basis, and all other bidders shall be entitled to be present for all bidding with the understanding that the true identity of each bidder shall be fully

{00229287.5 / 1056-001}  10

      disclosed to all other bidders and that all material terms of each bid will be fully disclosed to all other bidders throughout the entire Auction; (B) the opening bid at the Auction shall not be less than the Initial Overbid; (C) all offers subsequent to the opening bid at the Auction (*i.e.*, the Subsequent Incremental Bid Amount) must exceed the prior offer by not less than $5,000 and/or at least ; (D) with respect to any such further overbid submitted by the Buyer, the consideration offered by the Buyer shall be deemed to include the full amount of the Expense Reimbursement potentially payable to the Buyer; and (E) bidding at the Auction will continue until such time as no further bids are made within the time limit announced by Debtor's counsel, upon consultation with the Committee (if any);

   iii. Upon conclusion of the Auction, the Debtor, upon consultation with the Committee, shall determine the highest or otherwise best bid (the "Successful Bidder"), and such bid shall be submitted for approval by the Bankruptcy Court. Subject to the Court's calendar, the Sale Hearing will occur no later than two (2) business days after the conclusion of the Auction.

   iv. The Successful Bidder shall have the burden of establishing by competent evidence that it qualifies for section 363(m) protections, and that it is capable of providing adequate assurance of future performance with respect to any executory contract or unexpired lease it wishes to have assumed and assigned pursuant to section 365;

   v. If the Debtor does not receive any Qualified Bids, the Debtor will report the same to the Bankruptcy Court and will proceed with the Sale Hearing and no Auction shall be held;

   vi. Debtor's counsel, upon consultation with the Committee, reserves the right to establish such other reasonable rules and procedures for the conduct of the Auction, provided that such rules and procedures are publicly announced at the Auction.

  e. Expense Reimbursement. The Expense Reimbursement shall be payable to the Buyer under the following terms and conditions:

   i. If a person other than the Buyer is determined to be the Successful Bidder for the Assets and the Debtor closes a transaction with such other Successful Bidder, the Buyer shall receive the Expense Reimbursement, payable at closing from the proceeds of such transaction; and

   ii. The Expense Reimbursement shall be accorded treatment as a superpriority administrative expense claim in the Chapter 11 case.

## The Bidding Procedures are Reasonable and should be Approved

23. Bankruptcy Rule 6004(f)(1) provides that a sale of property outside of the ordinary course of business may be by private sale or public auction. While the Debtor made good faith efforts to market its business and the Assets prior to the Petition Date, and the Offer was the result of such efforts, the Debtor is prepared to subject the Offer to higher or better bids to ensure the maximization of value for creditors. The Debtor submits that the Bidding Procedures are fair and reasonable and should be approved. They afford the Debtor the opportunity to subject the Assets to competitive bidding while preserving the Buyer as a stalking horse bidder and thereby providing a floor price for the Assets.

24. The Bidding Procedures will also ensure that the Sale Hearing is conducted in a fair and orderly manner, and that participants are *bona fide* bidders with the ability and desire to consummate any proposed transaction. The Initial Overbid will ensure that the competitive bidding process compensates the Debtor for the cost of the very modest Expense Reimbursement required by the Buyer and permits the Debtor to derive an added economic benefit from any such bids. The Subsequent Incremental Bid Amount reflects a fair and reasonable increment that should encourage competitive bidding and ensure that there is a true economic benefit to the Debtor and the estate for each successive bid.

25. The Expense Reimbursement is intended to provide some compensation to the Buyer for its out of pocket expenses in conducting due diligence and the negotiation of the Sale Agreement, and as an incentive for the Buyer to serve as the Debtor's stalking horse bidder and subject the Assets to competitive bidding. Because the principal part of the Purchase Price will be paid over time, in an amount that will not be known until after the Closing, the Buyer has requested as its Expense Reimbursement an amount equal to only a very small percentage of the fixed cash payment that it will make at Closing. The structure of the Expense Reimbursement is the result of good faith, arm's length negotiation among the parties. *See In re: Integrated Resources, Inc.,* 147 B.R. 650, 658 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2nd Cir. 1993); *In re: 995 Fifth Ave. Assoc., L.P.*, 96 B.R. 24, 28 (Bankr.

S.D.N.Y. 1989) (Break-up fee which is the result of good faith, arm's length agreement and not tainted by self-dealing should be upheld).

26.    In the instant case, the proposed Expense Reimbursement is fair and reasonable in relation to the proposed Purchase Price and in light of the funds and efforts expended by the Buyer to date. Accordingly, the Debtor respectfully requests that this Court enter an order approving the Expense Reimbursement and Bidding Procedures and granting related relief, all as set forth in the form of order attached to this Motion as **Exhibit B** (the "Bidding Procedures Order").

### The Sale is Supported by Sound Business Judgment and Should be Approved

27.    The Debtor submits that the terms of the Sale Agreement are fair and reasonable, and that ample authority exists for the approval of the sale of the Assets to the Buyer. Section 363(b) of the Bankruptcy Code provides that a debtor-in-possession, after notice and a hearing, may use, sell, or lease property of the estate other than in the ordinary course of business. In pertinent part, the section provides:

> (b)(1) The trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

*See* 11 U.S.C. § 363(b)(1).

28.    In order for a court to approve a request for the use of property of the estate outside the ordinary course of business, the court must find that the proposed course of action is supported by sound business reasons. *See Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1071 (2nd Cir. 1983); *see also In re Chateaugay Corp.,* 973 F.2d 141 (2d Cir. 1993); *Bartel v. Bar Harbor Airways, Inc.,* 196 B.R. 268, 273 (S.D.N.Y. 1996); *In re Caldor, Inc.- NY,* 193 B.R. 182, 187 (Bankr. S.D.N.Y. 1996); *In re Thomas McKinnon Securities, Inc.,* 120 B.R. 301 (Bankr. S.D.N.Y. 1990). In reviewing such proposed transactions, courts should give substantial deference to the business judgment of the debtor-in-possession. *See e.g., Esposito v. Title Inc. Co. of Pa. (In re Fernwood Mkts.),* 73 B.R. 616, 621 n.2 (Bankr. E.D. Pa. 1987).

{00229287.5 / 1056-001 }                                    13

29. The Debtor submits that consideration of these factors militates in favor of this Court's approval of a section 363(b) sale process. Given the multiplicity of litigations pending against the Debtor, it is not believed that the Debtor is capable of reorganizing on a stand-alone basis. While the Debtor believes it has sufficient funds to continue to operate pending the Sale Hearing, it is concerned that unless it is permitted to undertake the Asset Sale at this time, the value of its business will decline, as litigation costs will make the Debtor increasingly unprofitable. An auction sale process, with a stalking horse bidder and a form of Sale Agreement in place, will allow the Debtor to maximize the value of its assets through a fair and open process.

30. Based upon the foregoing, the Debtor submits that the Sale Agreement and the proposed sale of the Assets is in the best interests of the Debtor, its estate, and its creditors, and is based upon sound, reasoned and informed business judgment warranting this Court's approval. *See In re Lionel Corp.*, 722 F.2d at 1071; *Bar Harbor Airways, Inc.*, 196 B.R. at 273; *In re Caldor, Inc. - NY*, 193 B.R. at 187.

31. The Debtor and the Buyer seek findings that the transactions contemplated by the Sale Agreement are (a) subject to the protections afforded to "good faith" purchasers under section 363(m) of the Bankruptcy Code and (b) not subject to avoidance under section 363(n) of the Bankruptcy Code. Section 363(m) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under section (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). In addition, section 363(n) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at

> which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount . . . [including] punitive damages . . . .

11 U.S.C. § 363(n).

32. The negotiations and the resulting transaction contemplated by the Sale Agreement are the result of good faith and arm's length negotiations between the Debtor and the Buyer and resulted in a Purchase Price that is both fair and reasonable in light of the circumstances. At the Sale Hearing, the parties will adduce evidence in support of the foregoing and will request that the Court incorporate findings on these matters as part of the Order approving the sale.

### The Sale should be Approved Free and Clear of All Liens, Claim and Encumbrances

33. Pursuant to section 363(f) of the Bankruptcy Code, after notice and a hearing, a debtor may sell property of the estate free and clear of all liens and encumbrances. In pertinent part, the section provides:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if-
>
> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which the property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Here, the Debtor believes that the Court may authorize the transfer the Assets free and clear of liens, claims and encumbrances, inasmuch as there are no known liens on the Assets.

### Assumption and Assignments of Executory Contracts

{00229287.5 / 1056-001}    15

34. Section 365 of the Bankruptcy Code authorizes a debtor-in-possession to assume and assign executory contracts or unexpired leases subject to court approval. The Sale Agreement provides for the assumption and assignment of the Assumed Contracts, and requires that the Buyer pay Cure Claims.

35. The decision to assume and assign an executory contract or unexpired lease is based upon the exercise of the debtor's "business judgment." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *In re III Enterprises Inc. V.*, 163 B.R. 453, 469 (Bankr.E.D.Pa. 1994) ("Generally, a court will give great deference to a debtor's decision to assume or reject the contract. A debtor need only show that its decision to assume or reject the contract is an exercise of sound business judgment - - a standard which we have concluded many times is not difficult to meet"). Section 365(b) of the Bankruptcy Code requires that a debtor-in-possession satisfy certain requirements at the time of assumption if a default exists under the contract or lease to be assumed.

36. Here, the Debtor has made the business decision to sell the Assets to the Buyer pursuant to the Sale Agreement, subject to higher and better offers. The Debtor has some contracts and leases with third parties used in the ordinary course of the Debtor's business, and those agreements are part of the orderly functioning of the Debtor's business.[5] As such, the assumption and assignment of the Assumed Contracts is an integral component of the Sale Agreement.

---

[5] For avoidance of any confusion, the Debtor notes that it has agreements with its clients but does not intend to assign those agreements over the objection of the clients. Clients will make their own decisions concerning whether to move their accounts to the Buyer (or other winning bidder) and if they chose to move to their accounts to the winning bidder, will be asked to consent to assignments.
The Successful Bidder will obtain certain client information in connection with the acquisition of the Debtor's books and records, and as specifically provided in the Sale Agreement, shall maintain that information pursuant to Privacy Laws.

{00229287.5 / 1056-001 }    16

37. To effectuate the assumption/assignment process, the Debtor proposes to serve the non-debtor parties to the Assumed Contracts set forth on **Exhibit B to the Bidding Procedures Order** with a notice advising each of them of the Debtor's interest in assuming and assigning such executory contract or lease and the amount of the Cure Claim (defined below) associated with that contract or lease according to the Debtor's records (the "Cure Notice"). The list of Assumed Contracts, which comprises all of the Debtor's executory contracts and unexpired leases,[6] sets forth (a) the name and address of the counterparties to the leases and executory contracts which may be assumed and assigned to the Buyer; (b) the nature of the executory contract/lease; and (c) the amount of any cure costs that the Debtor believes to be due and owing as reflected on its books and records.

38. Under the terms of the Sale Agreement, the Buyer is responsible for paying cure costs, if any, under any Assumed Contracts that are ultimately assumed and assigned. The proposed pre-fixed Order Scheduling Hearing provides for a bar date for the assertion of any cure costs by the non-debtor parties to the Assumed Contracts. The Debtor submits that such non-debtor parties to the Assumed Contracts must be required to file a claim by a deadline that is at least ten days prior to the Sale Hearing, setting forth all claims and arrearages against the Debtor under such Assumed Contracts, to the extent any such party disagrees with the amount set forth in the Cure Notice ("Cure Claims"). The proposed deadline will facilitate the sale process, as it will make it possible for the Debtor and the Buyer to review the filed Cure Claims, and for the Court to hear any disputed Cure Claims at the Sale Hearing or a later date to be determined by the Court. The Debtor further requests that the Court provide that any party that is required to file a Cure Claim, but fails to do so, shall be bound by the cure

---

[6] The Debtor has prepared this list to the best of its knowledge and ability. To the extent the Debtor subsequently determines that there are any other executory contracts or unexpired leases not included on the list, the Debtor will supplement the list, file it with the Court, and provide prompt notice to the counterparty (or counterparties) thereto.

{00229287.5 / 1056-001}    17

amount corresponding to their contract as set forth on Exhibit B to the Bidding Procedures Order, or on the party's Cure Notice, as applicable, and shall be forever barred from asserting any other claim(s) against the Debtor, the estate and/or any successful purchaser of the Assets arising under such executory contract or lease.  The proposed form of Cure Notice is attached hereto as **Exhibit C.**

39.     In an effort to provide the most up-to-date information to non-debtor parties to the Assumed Contracts and others, the Debtor will file a notice identifying the Successful Bidder no more than one business day after the conclusion of the Auction.

### The Debtor Requests that the Court Schedule the Sale Hearing and Fix the Manner and Notice of Sale

40.     The purpose of the Sale Hearing is to approve the sale of the Assets to the Buyer, or such other bidder as may tender a higher or better offer at the Auction.  Bankruptcy Rule 2002(a)(2) provides for twenty (20) days' notice of a "proposed use, sale or lease of property of the estate other than in the ordinary course of business . . . ." .  The Debtor seeks to balance the costs of the Chapter 11 case against the need to provide interested parties with time to conduct due diligence, and therefore requests that the Court schedule the Auction for March 3, 2015 or shortly thereafter and hold the Sale Hearing within a few days after the Auction.  The Debtor submits that such relief is reasonable and appropriate under the circumstances.

41.     The Debtor proposes that a true and complete copy of the proposed pre-fixed Order Scheduling Hearing, and this Motion, together with all exhibits, be served upon: (a) counsel to the Buyer, (b) all entities known to assert a lien, claim, interest or encumbrance in the Debtor's assets; (c) the twenty (20) largest unsecured creditors of the Debtor; (d) the United States Attorney's Office for the Southern District of New York; (e) all parties that have previously expressed interest in acquiring all or a

portion of the Debtor's assets; (f) all parties that have filed notices of appearance in this case as of the date of the Order Scheduling Hearing; and (g) the Office of the United States Trustee.

42. The Debtor further requests that the Court approve the form of sale notice annexed as **Exhibit D** hereto (the "Sale Notice"). The Debtor proposes to serve a copy of the Sale Notice upon (a) all known creditors of the Debtor; and (b) all federal, state and local taxing authorities in which the Debtor operates business/

### No Previous Request

43. No previous application or motion for the relief sought herein has been made by the Debtor to this or any other court.

(Remainder of Page Intentionally Blank)

**WHEREFORE**, the Debtor respectfully requests that this Court : (a) enter an Order Scheduling Hearing, substantially in the form pre-fixed hereto (i) fixing the date and time of a Sale Hearing to consider approval of the Sale and the deadline for objecting to the same; (ii) fixing the date and time of a hearing to consider the Bidding Procedures and the Expense Reimbursement and deadline for objecting to the same, (iii) fixing a deadline for the assertion of Cure Claims by counterparties to Assumed Contracts, and (iv) fixing the manner and form of notice of the Sale Hearing; (b) enter a Bidding Procedures Order, substantially in the form annexed hereto as **Exhibit B** hereto; (c) enter an Order authorizing the sale of the Assets pursuant to §§105(a), 363(b), (f), (k), (m), and (n) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 9014 and approving the assumption and assignment of the Assumed Contracts pursuant to §365 of the Bankruptcy Code and Bankruptcy Rule 6006, substantially in the form annexed hereto as **Exhibit E** hereto; and (d) grant the Debtor such other and further relief as this Court deems just and proper.

Dated:  Fishkill, New York
        January 5, 2015

                                        **NSB ADVISORS LLC,**
                                        Debtor and Debtor-in-Possession

                                        By: */s/ William F. Nicklin*
                                            William F. Nicklin, Manager

Filed by:

**HALPERIN BATTAGLIA RAICHT, LLP**

By: */s/ Alan D. Halperin*
    Alan D. Halperin, Esq.
    Donna H. Lieberman, Esq.
    40 Wall Street, 37th Floor
    New York, New York 10005
    Phone:  (212) 765-9100; Fax: (212) 765-0964
    ahalperin@halperinlaw.net
    dlieberman@halperinlaw.net

*Proposed Counsel to the Debtor and Debtor- in-Possession*

{00229287.5 / 1056-001 }                    20